UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 5:11-CV-11

**TERRELL W. HAM**                                                                                    **PLAINTIFF**

v.

**MARSHALL COUNTY, KENTUCKY, ET AL.,**                                           **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Motion for Summary Judgment by Defendants Sterling Emergency Services of the Midwest, Inc. ("Sterling") and Richard Scott Wilson, M.D. ("Dr. Wilson"). (DN 70). Plaintiff has filed his response (DN 71), to which Defendants have replied (DN 75). Plaintiff has additionally filed a supplemental response to Defendants' motion (142) and Defendants a supplemental reply (DN 145). Defendants have also filed a motion to strike their supplemental reply and substitute a shorter supplemental reply, per LR 7.1(d) (DN 146).

Also before the Court are two motions to compel from the Plaintiff (DN 67 & 143) and a motion for an extension of time to file a supplemental response to Defendants' motion (DN 144). These matters are now ripe for adjudication. For the reasons that follow, Defendants' Motion to Strike (146) is GRANTED. In considering the remaining motions before it, the Court will refer to the substituted supplemental reply. Furthermore, Defendants' Motion for Summary Judgment (DN 70) is GRANTED. Finally, because grant of summary judgment terminates these Defendants from the action, Plaintiff's motions to compel (DN 67 & 143) and motion for an extension to file a supplemental response (DN 144) are DENIED as MOOT.

## BACKGROUND

This personal injury action comes before the Court based on alleged violations of 42 U.S.C. § 1983 and tort theories of medical negligence and outrage. Plaintiff Terrell Ham, then serving a four-month sentence in the Marshall County Detention Center ("MCDC"), was temporarily released to his family on February 19, 2010, to pursue medical treatment after reporting severe pain, including trouble moving his legs.

Ham sought treatment at the Marshall County Hospital ("the Hospital"), arriving sometime before 7 p.m. At that time, Dr. Louis Forte ("Dr. Forte") was on duty at the emergency room (Dr. Wilson Depo. DN 115-4, p. 10), and as a result, his name was listed on Ham's medical chart as the treating physician. Ham, who had been treated by Dr. Forte before, saw him walk by the door and requested that Dr. Forte treat him, but was told he would be seen by whichever doctor was available. (Ham Depo. DN 115-1, pp. 10-11). Dr. Forte's shift ended at 7 p.m., and Ham was instead examined by Dr. Forte's replacement, Dr. Scott Wilson ("Dr. Wilson") (Wilson Depo. DN 115-4, p. 10).

Although Ham testified during his deposition that during the course of his treatment on February 19, 2010, he learned that it was Dr. Wilson who was examining him (Ham Depo. DN 115-1, p.16), Ham has also stated that he does not remember Dr. Wilson introducing himself but remembers being seen by a person he assumed was a doctor (Ham Depo. DN 115-1, p. 16 & DN 115-3, p.7). Ham also testified that he believed that Dr. Forte was in charge of the emergency room and was the person who signed off on him returning to jail (Ham Depo. DN 115-1, p. 16).

Dr. Wilson interviewed Ham about his condition and sought further information by phone from a representative at the MCDC (Wilson Depo. DN 115-4, p. 12). Thereafter, Dr. Wilson conducted a neurological examination of Ham, ordered a CT scan of Ham's head, and

ordered blood tests. After determining that Ham's neurological issue did not require immediate, emergency attention, Dr. Wilson discharged Ham with instructions to follow up with a neurologist. (Wilson Depo. DN 115-5, p. 16)

Ham was then returned to MCDC by his family. Ham's symptoms worsened and he was again released to his family, after which time he was admitted to Lourdes Hospital (Pl.'s Am. Compl. DN 25). Testing revealed an abscess and cord compression, which required immediate surgery (Pl.'s Am. Compl. DN 25). Ham was left paraplegic with weakness in his left arm (Pl.'s Am. Compl. DN 25).

Ham filed his original complaint with this Court on January 24, 2011, naming as defendants Marshall County, Kentucky; Marshall County Jailor Roger Ford; MCDC Physician Dr. H.W. Ford; MCDC Nurse Practitioner, Ruby Starks; the Marshall County Public Hospital District Corporation; Dr. Louis Forte; and John and Jane Does, Nos. 1-10, "employees of and health care professionals at the Jail and the Hospital" (DN 1). Ham alleges claims based upon medical negligence, the tort of outrage, and violations of 42 U.S.C. § 1983.

In a letter to Ham's counsel dated February 23, 2011, counsel for Dr. Forte indicated that although Dr. Forte's name was initially placed on Ham's medical chart, he neither saw nor treated Ham on February 19, 2010 (DN 71-2). After Defendants' responses to Ham's written discovery requests indicated Dr. Wilson and radiologist Dr. William Wilson may have been responsible for Ham's treatment, Ham moved to amend his complaint on July 5, 2011 to add them and their practice groups as defendants. On August 2, 2011, Ham's Amended Complaint added Doctors Scott Wilson and William R. Wilson and their practice groups, Sterling Emergency Services of the Midwest, Inc. ("Sterling") and Radiology Associates of Murray, PLLC ("RAM"), respectively, but kept Dr. Forte as a named defendant. Three months later, on

November 2, 2011, the Court dismissed Dr. Forte as a defendant in this action (DN 56). The Court has also entered orders dismissing claims against RAM and Dr. William R. Wilson (DN 54), H.W. Ford (DN 97), and Ruby Starks (DN 112).

Dr. Wilson and Sterling filed this Motion for Summary Judgment on March 30, 2012 (DN 70). First, the Defendants argue that Ham's claims against them in the Amended Complaint are barred by a one-year statute of limitations. Second, Defendants contend that Federal Rule 15(c), which dictates when a pleading may relate back to the date of the original pleading, does not apply because Ham knew that it was Dr. Wilson and not Dr. Forte who treated him, and therefore there was no mistake regarding the proper party's identity. Defendants also argue that even if 15(c) applies, Dr. Wilson neither knew nor should have known that an action had been filed concerning his February 19, 2010, treatment of Ham until he was served the Amended Complaint on approximately August 17, 2011. To their response, Defendants have attached Dr. Wilson's affidavit to this effect. Defendants alternatively move for summary judgment on Ham's § 1983 and outrage claims on substantive grounds.

In his response, Ham requested additional discovery on the issue of whether Dr. Wilson and/or Sterling knew or should have known that the action originally should have been brought against them. Ham recounts the process of elimination that counsel went through to determine that Dr. Wilson, and not Dr. Forte, was the correct defendant, and points out that defense counsel for Dr. Forte is also representing Dr. Wilson, contending that "[u]nder these circumstances, it is hard to imagine that [Dr. Wilson] could have possibly remained ignorant of this lawsuit for months following its filing." (DN 71). Ham has taken the deposition of Dr. Forte (DN 89-1) and requested and ultimately received a privilege log of all communications between Dr. Wilson or his counsel and any parties involved in this action during the 120 days after Ham filed his

original complaint (DN 94-1). Furthermore, the Court allowed Ham additional discovery before filing his supplemental brief, during which time Sterling produced for deposition Lamon Norton as its designated representative. In his subsequent motion to compel, Ham contends Norton did not possess the requested information concerning the instant litigation and Sterling's corporate structure and therefore requests the Court compel Sterling to designate a representative with adequate knowledge.

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

I.     **Applicable Statutes of Limitations**

a. <u>Ham's § 1983 and Medical Negligence Claims</u>

First, Ham's claims against Dr. Wilson and against Sterling for its own negligent supervision of Dr. Wilson are barred by a one-year statute of limitations. Because § 1983 does not provide a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 275–280 (1985). Thus, in Kentucky § 1983 actions are limited by the one-year statute of limitations found in KRS 413.140(1)(a). *Collard v. Ky. Bd. of Nursing,* 896 F.2d 179, 182 (6th Cir. 1990). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* at 183.  Further, "[t]he same one-year statute of limitations and accrual analysis applies to Plaintiff's negligence and medical malpractice claims." *Coate v. Montgomery County, Ky.,* No. 99–6123, 2000 WL 1648131, at *3 (6th Cir. Oct. 27, 2000) (citing Ky.Rev.Stat. Ann. § 413.140(1)(a), (e) and (2)).

Finally, because a claim of vicarious liability is derivative in nature, a plaintiff is required to file an action within the same limitations period. *ISP Chems. LLC v. Dutchland, Inc.*, No. 5:08-CV-153, 2011 WL 2690029 (July 6, 2011). Thus, Ham was required to bring his derivative claims against Sterling within the same one-year limitations period.

b. <u>Ham's Outrage Claim</u>

Ham's outrage claim is also barred by a one-year limitations period. To recover on the tort of outrage, Ham must show that Dr. Wilson intentionally or recklessly caused severe emotional distress to them by extreme and outrageous conduct. *Capital Holding Corp. v. Bailey,* 873

6

F.W.2d 187 (Ky. 1994). However, where an actor's conduct amounts to the commission of a traditional tort for which recovery for emotional distress is allowed, then the tort of outrage will not lie. *Bennett v. Malcomb,* 320 S.W.3d 136, 137 (Ky. Ct. App. 2010). "The tort of outrage is still a permissible cause of action, despite the availability of more traditional torts, as long as the defendants solely intended to cause extreme emotional distress." *Green v. Floyd County, Ky.*, 803 F. Supp. 2d 652, 655 (E.D. Ky. 2011) (quoting *Brewer v. Hillard,* 15 S.W.3d 1, 7–8 (Ky. Ct. App. 1999)). Furthermore, although Kentucky courts generally apply a five-year statute of limitations to outrage claims, "[t]he tort of outrage was not intended to provide a cause of action for plaintiffs who simply failed to bring a traditional tort claim within the statute of limitations." *Bennett*, 320 S.W.3d at 137.

Here, Ham pled medical negligence and violations of § 1983 in addition to the outrage claim. Although he alleges that Dr. Wilson's conduct was "so beyond the bounds of human decency" that it constituted outrage, Ham alleged no facts and offers no evidence that Dr. Wilson solely intended to cause extreme emotional distress in treating Ham; thus, an independent tort of outrage does not lie here. Furthermore, under the *Bennett* analysis, because Ham's underlying tort claims were barred by a one-year statute of limitations, so too are his claims for emotional damages.

### c. The Applicable One-Year Statute of Limitations Was Not Tolled

Ham received the allegedly negligent treatment from Dr. Wilson on February 19, 2010, and was diagnosed as having an abscess and cord compression at C6-7 on February 21, 2010.  Thus, Ham had at the latest until February 21, 2011, to file an action, which he accomplished on January 24, 2011.  However, Ham's claims against both Dr. Wilson and Sterling were not filed until August 2, 2011, after the one-year statute of limitations had run.

Ham first asserts that Dr. Wilson and Sterling should not be allowed to claim statute of limitations as a defense because their actions concealed Dr. Wilson as the proper defendant. In support, Ham cites K.R.S. § 413.190(2), which provides:

> When a cause of action mentioned in KRS 413.090 to 413.160 accrues against a resident of this state, and he by … concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the … obstruction shall not be computed as any part of the period within which the action shall be commenced.

"'[A]ny other indirect means' has been interpreted to mean some affirmative act or conduct which misleads or deceives the plaintiff and obstructs or prevents him from instituting a suit during a period of time in which he may lawfully do so." *Com., Labor Cabinet v. Hasken*, 265 S.W.3d 215, 226 (Ky. Ct. App. 2007) (quoting *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. 1952)), *superseded by statute on other grounds*, KRS § 95A.250, *as recognized in Madison Co. Fiscal Court v. Ky. Labor Cabinet*, 352 S.W.3d 572, 577 (Ky. 2011). Further, "though deception is involved, bad faith, evil design or an intent by the wrongdoer to deceive or mislead or defraud in the technical sense is not essential." *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 573 (Ky. 2009) (quoting *Adams*, 248 S.W.2d at 793).

First, Ham argues that "[t]he signing of [Ham's medical] records was an affirmative act by Wilson verifying the accuracy of those records. The illegibility of signature served as concealment of the fact that it was not Forte that signed the records." (DN 142, p. 8.) Were it not for this concealment, Ham says he would have known to sue Dr. Wilson, not Dr. Forte, for his deficient medical care. However, in Kentucky the affirmative act "intentional or otherwise, must have been *calculated to mislead* or deceive and to induce inaction by the injured party." *Hasken*, 265 S.W.3d at 227 (emphasis added). Here, although the illegibly-signed medical records indicating that Dr. Forte was Ham's treating physician may have been "exceedingly confusing,"

8

no facts suggest that by signing the records, Dr. Wilson calculated to mislead Ham or induce Ham to file a malpractice lawsuit against the wrong physician nearly a year later. *See id.*

Similarly, the inadvertent failure of Dr. Wilson's counsel to disclose a schedule that listed Dr. Wilson as the physician working at the Hospital the night Ham was treated does not operate to toll the statute of limitations. Although Kentucky law recognizes an "exception to the affirmative act requirement … where 'a party remains silent when the duty to speak or disclose is imposed by law,'" *Emberton,* 299 S.W.3d. at 574, such an exception is of no relevance here. Again, under K.R.S. § 413.190(2), a defendant's action (or inaction despite a duty) must be calculated to mislead or deceive the plaintiff. Here, there is no evidence counsel's failure was intentional or intended to hinder Ham's ability to file suit against the proper physician. *See* W. Gregory King Aff. (DN 146-1). Further, the attorney did not represent Dr. Wilson until Dr. Wilson was added as a new party on August 2, 2011.

## II.     FRCP 15(c) and Relation Back

Ham lastly argues that although he added Dr. Wilson and Sterling as defendants after the statute of limitations had expired, his amendment nonetheless relates back to his original complaint under Rule 15 of the Federal Rules of Civil Procedure. Subsection (c) of Rule 15 states that an amendment to a pleading relates back to the original time of filing when:

> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1)(A)-(C).

9

The Court will address Rule 15(c)'s applicability to each of the defendants individually.

    a. Sterling

Rule 15(c) does not operate to allow Ham's claims against Sterling to relate back because Ham amended his original complaint to add Sterling as a new party rather than correct a mistakenly-identified defendant. "[T]he precedent of this circuit clearly holds that 'an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" *In re Kent Holland Die Casting & Plating, Inc.,* 928 F.2d 1448, 1449 (6th Cir. 1991) (quoting *Marlowe v. Fisher Body,* 489 F.2d 1057, 1064 (6th Cir. 1973)).

Here, Ham is not attempting to substitute Sterling because he sued the wrong employer. Rather, Ham initially filed suit only against the doctor he believed negligently treated him, Dr. Forte, and did not allege claims against the physician's employer, also Sterling. In his amended complaint, Ham then attempted to add a claim against Sterling as a new party, but the statute of limitations had run. In other words, this is not a case of "misnomer" as contemplated by Rule 15(c), but instead an addition of a new party. *See In Re Kent Holland*, 928 F.2d at 1450; *Moore v. State of Tenn.,* 267 F. App'x 450, 455 (6th Cir. 2008); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Rule 15(c) does not allow such an amendment to relate back.

    b. Dr. Wilson

First, the Court is not convinced that Ham's amended complaint substituted Dr. Wilson for Dr. Forte. When Ham amended his complaint to add Dr. Wilson as a defendant, he continued to assert his claims against Dr. Forte and subsequently engaged in discovery with Dr. Forte for three more months before voluntarily dismissing him. Thus, Ham did not substitute a party as permitted under Rule 15(c), but instead added Dr. Wilson as an additional defendant. As

discussed above, longstanding Sixth Circuit precedent precludes Rule 15(c) from being used here, where Ham did not seek merely to correct a misidentification of the original defendant, Dr. Forte, but instead attempted to add Dr. Wilson as a defendant while maintaining his action against Dr. Forte. *In Re Kent Holland*, 928 F.2d at 1450; *Moore,* 267 F. App'x at 455; *Cox*, 75 F.3d at 240.

Secondly, even viewing Ham's amended complaint as substituting Dr. Wilson for Dr. Forte, Rule 15(c) does not apply to allow relation back. Both parties discuss at length whether Ham knew that Dr. Wilson, and not Dr. Forte, was the proper defendant when he filed his complaint. However, "[r]ule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing [his] original complaint." *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2493 (2010). "Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a *mistake regarding* the proper party's *identity*." *Id.* at 2493-94. In *Krupski*, the Supreme Court held that when a plaintiff knows the identities of two parties but mistakenly sues the wrong one, Rule 15(c) may allow relation back. *Id.* However, where a plaintiff does not know who a defendant is and fails to find out within the appropriate limitations period, he has not made a "mistake" as contemplated by Rule 15(c) and the *Krupski* Court. *Smith v. City of Akron*, 476 Fed. App'x. 67, 69 (6th Cir. 2012).

This is not a case of mistaken identity. Resolving ambiguities in favor of Ham,[1] Ham

---

[1] Dr. Wilson says he introduced himself to Ham the night he was treated (Wilson Depo. DN 115-4, p. 11). In his deposition, Ham says he cannot remember whether Dr. Wilson introduced himself, but also says he knew on the night of February 19, 2011, that it was Dr. Wilson who treated him. (Ham Depo. 115-1, p. 16). In his supplemental brief, Ham now argues that "it must be remembered that Ham was suffering from the first stages of what would ultimately be permanent paralysis, and was in enough pain that he had difficulty recalling the events of the day." He further points out that the deposition where Ham says he knew Dr. Wilson treated him on February 19, 2011, took place after he had discovered that Dr. Wilson, not Dr. Forte, treated him. The Court is not convinced that Ham's testimony, wherein he confirms three separate times without hesitating or requesting clarification that he knew the very night he was treated that Dr. Wilson treated him, is "equivocal." However, as discussed below, even accepting

11

*knew* Dr. Forte because he had been seen by him before. He saw him at the hospital, requested to be seen by him, but instead remembers being seen by another person he assumed was a doctor. Although Ham speculates that Dr. Forte was still at the hospital directing the actions of this unknown doctor, he certainly knew that it was not Dr. Forte who was in the room treating him. Even if by incorrectly listing Dr. Forte as the treating physician, Ham's medical records created the misimpression that Dr. Forte was *also* responsible for his care, Ham knew the very night he was at the Hospital that a physician other than Dr. Forte treated him.[2] Thus "Kruspski's problem is not [Ham's] problem. [Ham] did not make a mistake about which defendant to sue; he simply did not know whom to sue." *Smith*, 476 Fed. App'x. at 69; *see also Burdine v. Kaiser*, 3:09CV1026, 2010 WL 2606257 at *7 (N.D. Ohio June 25, 2010) ("Unlike *Krupski,* the plaintiff's problem here is not that [he] knew the parties' identities and simply failed to sue the correct one. Here, instead, plaintiff [alleges he] did not know the identity of [the defendant] until after the statute of limitations ran"). Thus, Ham's amended complaint "still suffers from the defect that failure to sue within the limitations period was based on a lack of knowledge, which the Sixth Circuit holds is not a mistake." *Burdine*, 2010 WL 2606257 at *7 (citing *Moore,* 267 F. App'x at 455; *Cox*, 75 F.3d at 240).

    Because the proposed amendment reflects a prior lack of knowledge, it does not arise from mistake and cannot relate back to the original complaint. *Id.* Thus, Ham's amended

---

the premise that Ham did not know Dr. Wilson was the physician who treated him on February 19, 2011, Ham did know that a physician other than Dr. Forte conducted his examination and nonetheless failed to discover that physician's identity until after the statute of limitations had run.

[2] Ham's discharge papers also support a finding that Ham knew Dr. Wilson's role in his treatment on February 19, 2011. Although Dr. Forte is listed as Ham's treating physician at the top of the discharge papers, the first section reads, in part, "Your diagnosis is: bilat [sic] extremity parasthesia of undetermined etiology and you have been seen by Dr. Wilson." (DN 127-3) (emphasis added). Ham's sister, Dottie Hamlet, signed Ham's discharge papers, and he acknowledges that she was authorized to accept documents from the hospital on his behalf. (Ham Depo. 115-1, p. 18). This is further evidence that Ham knew Dr. Wilson was his treating physician and failed to timely file suit against him. Despite this evidence, the Court has accepted Ham's assertion that he did not know Dr. Wilson's identity in holding that his claims do not relate back under 15(c).

complaint remains subject to the one-year statute of limitations that expired on February 21, 2011. Because Ham filed the amended complaint on August 2, 2011, all claims against Dr. Wilson and Sterling are dismissed as untimely. As a final note, because the Court holds Ham's amended complaint does not arise from a mistake, and therefore may not relate back, it is unnecessary to allow the parties additional discovery regarding defendants' knowledge of mistake.

## CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED THAT:

(1) Defendants' Motion to Strike and Substitute (DN 146) is GRANTED.

(2) Defendants' Motion for Summary Judgment (DN 70) is GRANTED. Defendants Richard Scott Wilson, M.D., and Sterling Emergency Services of the Midwest, Inc. are terminated from this action.

(3) Plaintiff's Motions to Compel (DN 67 & 143) and Plaintiff's Motion for an Extension to File a Supplement Response (DN 144) are DENIED as MOOT.

CC: Counsel